1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

13
14
15
16
17
18
19
20
21

| | |
|---|---|
| THE ESTATE OF ANASTACIO HERNANDEZ-ROJAS, *et al.*,<br><br>                   Plaintiffs,<br><br>v.<br><br>CUSTOMS AND BORDER PATROL AGENT 7663, *et al.*,<br><br>                   Defendants. | Civil No. 11-cv-0522-L(DHB)<br><br>**ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION FOR STAY OF DISCOVERY [doc. #91]** |

22
23
24
25
26

On August 1, 2012, Defendants Customs and Border Protection Agent 7663[1], Border Patrol Agent V325, Border Patrol Agent V315, Immigration Enforcement Agent 2054, Immigration Enforcement Agent 7G2186, Border Patrol Agent L, Customs and Border Protection Agent B, Customs and Border Protection Officer S, Border Patrol Supervisor V61,

27
28

---

[1] Defendants' Motion explains that the defendant's title is "Officer," not "Agent." (Defs.' Mot. 1:1.)

1   Border Patrol Supervisor I199, Border Patrol Supervisor I68, Customs and Border Protection

2   Supervisor CA Q03175, the United States of America, and DOES 1-25 ("Defendants") filed a

3   motion for stay of discovery pending the conclusion of grand jury proceedings. [doc. #91.] On

4   August 21, 2012, Plaintiffs The Estate of Anastacio Hernandez-Rojas, Daisy Hernandez, Daniel

5   Hernandez, Daniela Hernandez, and Fabian Hernandez ("Plaintiffs") filed an opposition. [doc.

6   #94.] Defendants filed a reply memorandum. [doc. #102.] The Court found this motion suitable

7   for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1).

8   [doc. #101.] For the following reasons, the Court will deny without prejudice Defendants'

9   motion to stay discovery.

10  **I.    BACKGROUND**

11      On March 16, 2011, Plaintiffs commenced this action. [doc. #1.] On March 22, 2011,

12  Plaintiffs filed the first amended complaint, and on August 2, 2011, Plaintiffs filed the second

13  amended complaint. [doc. #3, 16.] On March 23, 2012, Plaintiffs filed the operative third

14  amended complaint ("TAC"). [doc. #53.] Plaintiffs assert fourteen causes of action: five of the

15  causes of action are alleged constitutional violations pursuant to *Bivens v. Six Unknown Named*

16  *Agents*, 403 U.S. 388 (1971), and the remaining nine are brought under the Federal Tort Claims

17  Act and the Alien Tort Claims Act. (TAC 1.) Plaintiffs seek general and special damages,

18  punitive damages, and injunctive or declaratory relief. (*Id.* 26:6-12.)

19      Plaintiffs allege that their father Anastacio Rojas Hernandez[2] died as a result of physical

20  abuse by Defendants. (TAC ¶ 28.) On May 28, 2010, United States Border Patrol agents arrested

21  Mr. Hernandez-Rojas and his brother on United States land near the Mexican border. (*Id.* ¶¶ 43-

22  44, 46.) Following their arrest, the Border Patrol agents turned Mr. Hernandez-Rojas and his

23  brother over to agents of the Wackenhut Company. (*Id.* ¶ 54.) Those agents then transported the

24  men to the Border Patrol Detention Facility and turned them over to two of the defendants,

25

26          _____

27          [2] The TAC gives the decedent's name as "Anastacio Hernandez-Rojas" and "Anastacio Rojas
    Hernandez." (TAC 1:11-12, 3:14-15.) Defendants' Motion gives the decedent's name as "Anastacio
    Hernandez-Rojas." (Defs.' Mot. 1:15.) Plaintiffs' Opposition writes the name as "Anastacio Hernandez
28  Rojas." (Pls.' Opp. 3:15.) The Court will refer to the decedent as "Mr. Hernandez-Rojas."

11cv0522

Border Patrol Agent V315 and Border Patrol Agent V325. (*Id.* ¶¶ 57, 59.)

After Agent V325 ordered Mr. Hernandez-Rojas to empty his water jug, the agent allegedly slapped the jug from Mr. Hernandez-Rojas's hand. (TAC ¶¶ 62, 64.) Following Mr. Hernandez-Rojas's complaint to the agent about the slap, Agent V325 allegedly grabbed Mr. Hernandez-Rojas, pushed him against a wall, and "repeatedly kicked the inside of Anastacio's ankles." (*Id.* ¶¶ 65-67.) Mr. Hernandez-Rojas requested medical treatment and an opportunity to appear before an Immigration judge. (*Id.* ¶¶ 72-73.) Agent V325 allegedly did not comply with Mr. Hernandez-Rojas's requests. (*Id.* ¶ 74.)

After being taken to the processing area, Mr. Hernandez-Rojas complained to two Border Patrol agents about Agent V325's treatment and requested medical attention and the opportunity to appear before an Immigration judge. (TAC ¶¶ 75-76.) Mr. Hernandez-Rojas then reiterated his complaint and requests to Border Patrol Supervisor V61. (*Id.* ¶ 78.) In response, Supervisor V61 allegedly ordered Agents V315 and V325 to remove Mr. Hernandez-Rojas from the United States. (*Id.* ¶ 82.) The agents drove Mr. Hernandez-Rojas to a border area known as "Whiskey 2," took him out of the car, and allegedly pushed him against the car and "tried to throw him to the ground." (*Id.* ¶¶ 86, 88.) Immigration Enforcement Agent 7G2186 and Immigration Enforcement Agent 2054 arrived and allegedly struck Mr. Hernandez-Rojas "repeatedly" with batons. (*Id.* ¶ 89.) Border Patrol Agent L arrived and allegedly punched Mr. Hernandez-Rojas "repeatedly." (*Id.* ¶ 90.) The agents allegedly threw Mr. Hernandez-Rojas to the ground and handcuffed him. (*Id.* ¶ 91.) While Mr. Hernandez-Rojas was lying on his stomach, the agents allegedly "punched, kicked and stepped on Anastacio's head and body." (*Id.* ¶ 92.)

While this was taking place, a group of civilians formed. (TAC ¶ 93.) The civilians took photographs and videos of the events and allegedly screamed for the agents to stop. (*Id.* ¶¶ 94-95.) Mr. Hernandez-Rojas allegedly cried out for help and begged for the agents to stop. (*Id.* ¶ 98.) Plaintiffs allege that U.S. Customs and Border Protection Supervisor CAQ03175 and officers confiscated bystanders' phones and erased the photographs and videos. (*Id.* ¶ 96.)

Agents B and S, along with the original agents on the scene, allegedly struck Mr. Hernandez-Rojas. (TAC ¶ 102.) After Border Patrol Supervisors I199 and I68 arrived, they

11cv0522

1   allegedly "permitted and encouraged the agents to continue abusing Anastacio." (*Id.* ¶¶ 103-

2   105.) Customs and Border Patrol Officer V7663 allegedly shot Mr. Hernandez-Rojas with his

3   Taser gun five times. (*Id.* ¶ 107, 114.) Border Patrol Agent L, Customs and Border Protection

4   Agent B, and Customs and Border Protection Officer S then allegedly beat Mr. Hernandez-Rojas

5   and "ziptied his legs to his already handcuffed hands, putting him in a 'hog tied' position on his

6   stomach." (*Id.* ¶ 115.)

7        Plaintiffs allege that as a result of these events, Mr. Hernandez-Rojas suffered a heart

8   attack and ultimately died. (TAC ¶¶ 116, 118.) Dr. Marvin Pietruszka performed an autopsy and

9   found several injuries to Mr. Hernandez-Rojas's body. (*Id.* ¶ 118.) Dr. Pietruszka ruled the death

10   a homicide and found "the cause of death to be lack of oxygen to the brain brought on by a heart

11   attack." (*Id.* ¶ 119.)

12        Depositions have not yet begun. (Defs.' Mot. 3:25; Pls.' Reply 3:2-3.) On June 28, 2012,

13   Magistrate Judge Bartick granted the parties' joint motion to continue discovery deadlines. [doc.

14   #77.] The modified scheduling order required depositions of "the investigating officers from the

15   San Diego Police and Fire Departments, the San Diego County medical examiner, the

16   toxicologists, and all other non-percipient fact witnesses" to be completed by October 30, 2012.

17   (*Id.*) All fact discovery is required to be completed by January 2, 2013. (*Id.*)

## II.   LEGAL STANDARD

19        Under the Constitution, a judge is not required to stay civil proceedings until criminal

20   proceedings have concluded. *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir.

21   1995) (citing *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989).

22   Simultaneous civil and criminal proceedings are "unobjectionable" . . . "[i]n the absence of

23   substantial prejudice to the rights of the parties involved." *Id.* (quoting *Securities & Exchange*

24   *Comm'n v. Dresser Indus.*, 628 F.2d 1358, 1375 (D.C. Cir. 1980) (internal quotations omitted).

25   However, a court may decide to stay civil proceedings when justice so requires. *Id.* (citing

26   *Dresser*, 628 F.2d at 1375). When deciding whether to stay civil proceedings due to a parallel

27   criminal proceeding, courts should make the decision "in light of the particular circumstances

28   and competing interests involved in the case." *Id.* (quoting *Molinaro*, 889 F.2d at 902) (internal

11cv0522

quotations omitted). Courts must consider "the extent to which the defendant's fifth amendment rights are implicated" and should also consider these factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay;
> (2) the burden which any particular aspect of the proceedings may impose on defendants;
> (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources;
> (4) the interests of persons not parties to the civil litigation; and
> (5) the interest of the public in the pending civil and criminal litigation.

*Id.* at 324-25 (quoting *Molinaro*, 889 F.2d at 902-03).

A defendant does not have an "absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating*, 45 F.3d at 326. Courts can conduct simultaneous civil and criminal proceedings regarding the same matter, and "it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding." *Id.* (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). When analyzing the government's request for a stay, "courts within the Ninth Circuit have applied the *Molinaro* factors." *Acacia Corporate Management, LLC v. United States*, 2008 WL 4911907 (E.D. Cal. 2008); *see Belford Strategic Inv. Fund, LLC v. United States*, 2005 WL 3278597 (N.D. Cal. 2005). When conducting the balancing, courts acknowledge that "[t]he case for staying civil proceedings is 'a far weaker one' when '[n]o indictment has been returned[, and] no Fifth Amendment privilege is threatened.'" *Molinaro*, 889 F.2d at 903 (quoting *Dresser*, 628 F.2d at 1376).

## III.   DISCUSSION

Defendants' Motion is based on five grounds: (1) the United States Department of Justice has reportedly convened a federal grand jury to investigate potential criminal charges against Defendants based on the events alleged in the TAC; (2) discovery in the civil action would force Defendants to choose between their Fifth Amendment rights and defending the action; (3) there has been prejudicial media attention surrounding the events alleged in the TAC; (4) given the media attention surrounding these events, Defendants' deposition testimony will end up in the hands of the prosecution and thus expand criminal discovery beyond the limits of Federal Rule

11cv0522

1    of Criminal Procedure 16(b); (5) Defendants are concerned that, by giving depositions, their

2    identities could be revealed. (Defs.' Mot. 1:20-25, 2:1-7.)

3                1.       **Defendants' Fifth Amendment Rights**

4                         A.       **Defendants Have Not Waived Their Fifth Amendment Rights.**

5           Plaintiffs contend that Defendants have waived their Fifth Amendment rights by

6    admitting facts in police interviews. (Pls.' Opp. 11:20-28.) They argue that because Defendants

7    admitted to using physical force upon Mr. Hernandez-Rojas, "[t]hey therefore will not be

8    prejudiced in this case by any adverse inference that might attach to their assertion of the Fifth

9    Amendment privilege." (*Id.* 12:17-20.) Plaintiffs quote *Rogers v. United States*, 340 U.S. 367,

10   373 (1951), in support of their contention: "federal courts have uniformly held that, where

11   criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid

12   disclosure of the details." (Pls.' Opp. 12:1-9.) In concluding that the petitioner had waived her

13   Fifth Amendment privilege against self-incrimination by testifying at grand jury proceedings, the

14   Supreme Court wrote, "petitioner cannot invoke the privilege where response to the specific

15   question in issue here would not further incriminate her." *Rogers*, 340 U.S. at 373.

16          Here, Defendants have not waived their Fifth Amendment privilege. Defendants'

17   statements were made to law enforcement officers during the course of the investigation, not

18   during the course of grand jury proceedings. (Pls.' Opp. 11:22-24.) Moreover, admitting the use

19   of physical force is not admitting the use of excessive force, as alleged in the TAC. Should

20   Defendants choose to testify in this matter, such testimony may expose them to civil liability,

21   liability which has not established by virtue of their statements that they used "physical

22   force" upon Mr. Hernandez-Rojas. Further, "[a] waiver of the Fifth Amendment privilege at one

23   state of a proceeding is not a waiver of that right for other stages." *United States v. Trejo-

24   Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978) (concluding that a defendant did not waive "his

25   right to refuse to give self-incriminating testimony when he executed the incriminating affidavit

26   in support of [another defendant's] severance motion").

27          Accordingly, the Court finds that Defendants have not waived their right to assert the

28   Fifth Amendment in this proceeding by virtue of admitting to law enforcement officers that they

11cv0522

used physical force upon Mr. Hernandez-Rojas.

**B.    Defendants' Request For A Stay Is Premature.**

When deciding whether to grant a stay of a civil proceeding, a court must first consider "the extent to which the defendant's fifth amendment rights are implicated." *Keating*, 45 F.3d at 324 (quoting *Molinaro*, 889 F.2d at 902). As of the filing of Defendants' Reply, two defendants had been subpoenaed to testify before the grand jury. (Defs.' Reply 2:21-22; Ex. 9-11.) Defendants argue that given the grand jury inquiry, they have the right to invoke the Fifth Amendment in this civil matter, as giving their account of the events in the civil case would waive their Fifth Amendment rights in the potential criminal matter. (Defs.' Mot. 6:14, 20-22.) Defendants contend that they should not have to choose between asserting their Fifth Amendment rights and defending the civil action. (*Id.* 6:22-23.)

In support of their position, Defendants cite to *Acacia Corporate Management, LLC v. United States*, 2008 WL 4911907 (E.D. Cal. 2008), and *Halliday v. Spjute*, 2008 WL 5068588 (E.D. Cal. 2008). In *Acacia*, the court extended the stay requested by the defendant, the United States, after finding that the reasons the court initially granted the stay were still in effect. 2008 WL 4911907 at 2. The main reason the court extended the stay was the fact that the plaintiffs were still under criminal investigation. *Id.* The United States requested the stay "to prevent privileged information in a criminal case [against the plaintiffs] from being exposed during [civil] discovery." *Id.* at 1. In its prior order, the court granted the stay, despite the fact that the plaintiffs had not been indicted, but limited the stay to six months. *Id.* at 2. In extending the stay for another six months, the court noted that "the lack of any indictment after all this time is disturbing" and wrote that the extension was "likely to be the last one granted." *Id.*

In *Halliday*, the defendant, the United States, moved for a six-month stay pending a criminal investigation and grand jury investigation of the plaintiffs. 2008 WL 5068588 at 1. The plaintiffs filed the civil action against the IRS agents for alleged constitutional violations pursuant to *Bivens*. *Id.* at 2. When discussing the public interest, the court found that discovery in the civil case and the criminal matter would likely cover the "same substantive material." *Id.* at 4. The court noted that because "the civil discovery rules are quite broad, they would permit

11cv0522

1  discovery that likely will interfere with the criminal investigation." *Id.* In conclusion, the court

2  found that the public interest "weighs strongly in favor of staying the case and the risk of

3  compromising the criminal case can be avoided by staying the civil suit." *Id.* The court noted

4  that the plaintiff's "Fifth Amendment rights may be burdened." *Id.* at 5. The court granted the

5  stay but because the plaintiffs had not been indicted, limited the stay to six months. *Id.*

6      Plaintiffs stress the fact that none of the defendants have been indicted and that given this,

7  "any implication of Defendants' constitutional rights is largely speculative and insufficient to

8  support a stay." (Pls.' Reply 11:4-7.) Plaintiffs cite to the Ninth Circuit's decision in *S.E.C. v.*

9  *Global Express Capital Real Estate Inv. Fund, I, LLC*, 289 Fed. Appx. 183 (9th Cir. 2008). (Pls.'

10  Reply 10:16-20.) In *Global Express*, the Ninth Circuit upheld the magistrate judge's denial of a

11  stay requested by one of the defendants noting that the "conclusion was appropriate" as "no

12  criminal charges had been filed against [the defendant] at the time she moved for a stay (nor

13  were criminal charges ever filed)." 289 Fed. Appx. at 191. The Ninth Circuit upheld the order

14  denying the stay after finding that a stay "would be prejudicial to the SEC, frustrate the work of

15  the receiver, and lead to an inefficient use of the court's resources." *Id.*

16      Defendants challenge Plaintiffs' use of *Global Express* and other cases arguing that they

17  are distinguishable from the present case, as they "involve civil enforcement actions by federal

18  agencies." (Defs.' Reply 3:18-19.) Defendants state that had the *Global Express* action been

19  stayed, "the public would have suffered." (*Id.* at 3:21.) Defendants contend that the instant action

20  "involves competing private interests" and "no overarching public interests that require the civil

21  action to proceed at the price of the Defendants' Fifth Amendment rights." (*Id.* at 4:1-4.) The

22  Court does not agree and finds all of the cases cited by the parties to be distinguishable.

23      First, Defendants cite to *Acacia* and *Halliday*, in which the courts extended or granted a

24  stay due to the effect that ongoing civil actions would have on criminal investigations. *Acacia*,

25  2008 WL 4911907 at 2; *Halliday*, 2008 WL 5068588 at 4. Both cases involved public interests.

26  In *Acacia*, the plaintiffs in the civil action were the defendants in the criminal case. 2008 WL

27  4911907 at 2. The court in *Acacia* extended the government's request for a stay given the

28  government's ongoing criminal investigation of the plaintiffs and the risk that privileged

8

11cv0522

1   information from the criminal case would become available to the plaintiffs during civil

2   discovery. *Id.*  Here, Defendants have to defend themselves in this civil action and if indicted,

3   will have to defend themselves in the criminal matter. Defendants point out that they are

4   defending themselves "in their individual capacities." (Defs.' Mot. 4:2.) Thus, allowing civil

5   discovery would not hamper the criminal investigation of Defendants. Additionally, as the court

6   in *Acacia* mentioned, and as is the case here, "the lack of any indictment after all this time is

7   disturbing." *Acacia*, 2008 WL 4911907 at 2.

8        Second, in *Halliday*, as in *Acacia*, the plaintiffs in the civil action were the defendants in

9   the criminal proceedings. 2008 WL 5068588 at 1. The court granted the government's request

10  for a stay of the plaintiffs' civil action pending the criminal investigation and grand jury

11  investigation of the plaintiffs. *Id.* Because the plaintiffs were under investigation, it was in the

12  public's interest to stay the plaintiffs' civil action against the government pending the conclusion

13  of the government's criminal investigations. Here, Plaintiffs seek relief from injuries allegedly

14  caused by Defendants, which may also expose Defendants to criminal liability. Because

15  Plaintiffs are not the subject of the criminal investigation, the public would not be harmed by

16  allowing Plaintiffs to proceed with their civil action.

17       In *Halliday*, the court mentioned that the plaintiff's "Fifth Amendment rights may be

18  burdened," but the court's primary reason for granting the stay was the public interest. 2008 WL

19  5068588 at 5. Additionally, because the plaintiffs had not been indicted, the court limited the

20  stay to six months. *Id.* Because this civil action will likely not interfere with the government's

21  criminal investigation of Defendants, the public interest weighs in favor of allowing this case to

22  proceed as scheduled. Moreover, because none of the defendants have been indicted, the current

23  risks to Defendants, in proceeding with this case, are low.

24       Plaintiffs' case law is also distinguishable from the instant case but is more informative.

25  In *Global Express*, the defendant requested a stay of the civil action pending the outcome of the

26  criminal case against her. 289 Fed. Appx. at 191. In the civil case, the plaintiff was the SEC,

27  whereas here, Plaintiffs are private individuals. *Id.* at 186. Thus, in *Global Express*, the public

28  interest in proceeding with the civil case was greater than it is here. However, the Ninth Circuit

9

1   in determining that the magistrate judge's "conclusion was appropriate," stated that at the time

2   the judge denied the defendant's request for a stay, the defendant had not yet been indicted, nor

3   was she ever indicted. *Id.* at 191. The Court finds this conclusion instructive.

4           The Court notes Defendants' Fifth Amendment concerns, but given that no indictments

5   have been issued and more than two years have passed since these events took place, the Court

6   finds that Defendants' request for a stay is premature. Defendants request a stay of these

7   proceedings pending the conclusion of grand jury proceedings. Because of the secrecy

8   surrounding grand jury proceedings, there is no way for the Court to know how long they will

9   last. As Plaintiffs mention, the stay requested by Defendants is effectively an indefinite stay.

10  (Pls.' Opp. 2:21-22.) Given the amount of time that has passed since these events took place and

11  the fact that none of the defendants have been indicted, this factor weighs in Plaintiffs' favor.

12              **2.      Plaintiffs' Interests**

13          Courts must also consider "the interest of the plaintiffs in proceeding expeditiously with

14  this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay."

15  *Keating*, 45 F.3d at 325 (quoting *Molinaro*, 889 F.2d at 903). Defendants argue that Plaintiffs

16  will not be prejudiced by a delay of this case, as "individual Defendants' accounts, along with

17  third party witnesses, have been captured in detailed reports" making it "unlikely that the

18  passages [sic] of time will adversely affect Plaintiff's ability to press their case after a stay."

19  (Defs.' Mot. 6:27-28, 7:1-4.) Plaintiffs argue that they will be "substantially prejudiced" if the

20  court stays the case. (Pls.' Opp. 13:7-8.) Plaintiffs state that they have been waiting for more

21  than two years for the Court to hear their claims and that the witnesses' memories will

22  increasingly fade as time passes. (*Id.* 13:13-15.) Plaintiffs also state that "witnesses move to

23  location [sic] beyond the reach of process and the family members suffer from uncertainty, delay

24  and lack of closure." (*Id.* 3:6-7.)

25          The Court finds that Plaintiffs have an interest in seeing this case proceed as scheduled.

26  Plaintiffs commenced this action in March of 2011 and have been waiting almost two years for it

27  to be heard. [doc. #1.]; (Pls.' Opp. 13:8-9.) Defendants have responded to the TAC, but

28  discovery has not yet begun. [doc. #59.]; (Pls.' Opp. 13:9-10.) Given the amount of time that has

11cv0522

1   transpired since the filing of the initial complaint and the fact that none of the defendants have

2   been indicted, the Court finds that Plaintiffs would face substantial prejudice in having this case

3   stayed. Thus, this factor weighs in Plaintiffs' favor.

### 3.   Defendants' Interests

5       The next factor is "the burden which any particular aspect of the proceedings may impose

6   on defendants." *Keating*, 45 F.3d at 325 (quoting *Molinaro*, 889 F.2d at 903). Defendants have

7   three points regarding their interests. (Defs.' Mot. 7:8-16.) First, Defendants argue that, in

8   addition to their Fifth Amendment concerns, "depositions and expert witness discovery will

9   convey the Defendants' strategy for defending any criminal proceeding and will effectively

10  provide the prosecution with information to which it would not be entitled under Federal Rule of

11  Criminal Procedure 16(b)." (*Id.* 7:8-11.) In support of their position, Defendants cite to *S.E.C. v.*

12  *Dresser*, 628 F.2d 1368, 1376 (D.C. Cir. 1980), in which the court discussed the issues raised by

13  Defendants after writing that "the strongest case for deferring civil proceedings until after

14  completion of criminal proceedings is where a party *under indictment* for a serious offense is

15  required to defend a civil or administrative action involving the same matter." (emphasis added).

16  In affirming the district court's order, which denied the defendant's motion to quash the SEC

17  subpoena in light of grand jury proceedings, the circuit court noted that "[n]o indictment has

18  been returned; no Fifth Amendment privilege is threatened; Rule 16(b) has not come into effect;

19  and the SEC subpoena does not require Dresser to reveal the basis for its defense." *Id.* at 1370,

20  1376, 1378. While the facts of *Dresser* are distinguishable from the present case, it is also true

21  here that no indictments have been issued, no Fifth Amendment privilege is currently threatened,

22  and Rule 16(b) is not in effect.

23      Defendants also cite to *S.E.C. v. Alexander*, 2010 WL 5388000 (N.D. Cal. 2010), in

24  support of their interests. In granting the stay of the defendant's answer and all discovery, the

25  court wrote that the defendants' Fifth Amendment concerns were "substantial," as the

26  defendants had been indicted and criminal proceedings had begun. *Id.* at 3, 8. With respect to

27  Defendants' first point, Plaintiffs highlight that it is not unconstitutional to place Defendants in a

28  position where they will have to choose between testifying or exercising their Fifth Amendment

11cv0522

1  privilege. (Pls.' Opp. 14:1-4.); *see Baxter*, 425 U.S. at 318-19. Moreover, none of the defendants
2  have been indicted.

3      Second, Defendants state that "discovery is likely to generate continued media attention"
4  and possibly "continued assault on the professional integrity of the Defendants." (Defs.' Mot.
5  7:12-14.) Defendants state that such attention could result in a biased jury during the potential
6  criminal proceedings and cite to *United States v. American Radiator & Standard Sanitary Corp.*,
7  388 F.2d 201, 204 (3d Cir. 1967), in support. (Defs.' Mot. 7:13-15.). In *American Radiator*, the
8  defendants faced criminal prosecution and moved for a stay of the civil action pending the
9  conclusion of the criminal proceedings. 388 F.2d at 203. Again, Defendants are not currently
10 facing criminal prosecution. As to Defendants' second point, Plaintiffs state that as none of the
11 defendants have been indicted, any burdens that Defendants may face "are speculative at this
12 juncture." (Pls.' Opp. 14:9-11.) Plaintiffs also argue that "[t]here is no basis for a stay based on
13 alleged prejudicial publicity." (*Id.* 14:14.) The Court agrees with both points.

14     Third, Defendants caution that "depositions pose the risk that the Defendants' identities
15 will be disclosed." (Defs.' Mot. 7:15-16.) Plaintiffs do not address Defendants' final point. The
16 Court recognizes this as a concern and will consider it in the balancing.

17     The Court sympathizes with Defendants' concerns regarding the continuation of these
18 proceedings; however, because none of the defendants have been indicted, Defendants' concerns
19 are premature. Regardless, for the purposes of the balancing, the Court weighs this factor in
20 Defendants' favor.

21          **4.    Court Efficiency**

22     Another factor courts must consider is "the convenience of the court in the management
23 of its cases, and the efficient use of judicial resources." *Keating*, 45 F.3d at 325 (quoting
24 *Molinaro*, 889 F.2d at 903). Defendants argue that this factor weighs in favor of a stay as a stay
25 "would conserve judicial resources" but go on to say that "'the concern for court efficiency
26 carries little weight' in this context." *Halliday*, 2008 WL 5068588 at 3; (Defs.' Mot. 7:19-21.) In
27 their Reply, Defendants contend that a stay of these proceedings could shorten the litigation, as
28 the parties may have an incentive to settle the matter depending upon whether Defendants are

11cv0522

1   indicted. (Defs.' Reply 8:24-26.) Plaintiffs contend that "judicial economy will be frustrated by

2   keeping this case on the Court's docket indefinitely until the potential criminal case against

3   Defendants, if any, has concluded." (Pls.' Opp. 15:20-21.)

4          Given the uncertainty as to whether any of the defendants will be indicted, it is not in the

5   Court's interest to grant Defendants' motion for stay. As discussed previously, the secrecy of

6   grand jury proceedings makes it impossible for the Court to determine when, if ever, any of the

7   defendants will face indictment. Thus, a stay of these proceedings would keep this matter on the

8   Court's caseload without moving toward a resolution and in the absence of any immediate threat

9   to Defendants. Accordingly, the Court finds that this factor weighs in Plaintiffs' favor.

10                    **5.    Third Party Interests**

11         The second-to-last factor that courts must consider is "the interests of persons not parties

12  to the civil litigation." *Keating*, 45 F.3d at 325 (quoting *Molinaro*, 889 F.2d at 903). Neither

13  party raises any concerns regarding third party interests. Thus, the Court will not consider this

14  factor in the balancing.

15                    **6.    Public Interest**

16         The final factor courts must consider is "the interest of the public in the pending civil and

17  criminal litigation." *Keating*, 45 F.3d at 325 (quoting *Molinaro*, 889 F.2d at 903). Defendants

18  cite to *Halliday* on this point: "Administrative policy gives priority to the public interest in law

19  enforcement, such that a trial judge must give substantial weight to it in balancing the policy

20  against the rights of a civil litigant in prompt determination of his claims." 2008 WL 5068588 at

21  4 (citing *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962)). The Court agrees that the

22  public interest is one of the main factors to consider. Defendants cite to *Halliday*, but as the

23  Court has discussed, the facts of that case are distinguishable from the present case. In *Halliday*,

24  the court granted the government's request for a stay of the civil proceedings, as the government

25  was conducting a criminal investigation of the plaintiffs. 2008 WL 5068588 at 1. Given the

26  public interest in ensuring that the criminal investigation ran smoothly, the court granted the stay

27  of the civil matter despite the fact that the plaintiffs had not been indicted. *Id.* at 4, 5.

28         Although the Court recognizes Defendants' Fifth Amendment concerns and their service

13

11cv0522

to this country, Plaintiffs indicate and the Court agrees that there is a public interest in having this case proceed as scheduled. (Pls.' Opp. 15:9-10.) Unlike *Halliday* in which the civil plaintiff was the criminal defendant, in both this matter and the potential criminal case, Defendants will have to defend themselves. Defendants have not been indicted, and they are not responsible for conducting the potentially competing criminal investigation. Therefore, the public interest is different here than it was in *Halliday*. As the Ninth Circuit articulated in *Global Express*, whether or not the civil defendant has been indicted is a major point to consider when determining whether to grant the defendant's request for a stay. 289 Fed. Appx. at 191. Because none of the defendants have been indicted and because Defendants are not responsible for the potential criminal investigation, the public interest weighs in favor of allowing Plaintiffs to proceed with their civil action.

After weighing the competing interests, the Court finds that the factors weigh in favor of denying Defendants' motion for stay of discovery pending the conclusion of grand jury proceedings.

## IV.   CONCLUSION & ORDER

In light of the foregoing, the Court **DENIES WITHOUT PREJUDICE** Defendants' motion to stay discovery pending the conclusion of grand jury proceedings.

**IT IS SO ORDERED.**

DATED:  November 7, 2012

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. DAVID H. BARTICK
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

11cv0522