1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

13
14
15
16
17
18
19

THE ESTATE OF ANASTACIO
HERNANDEZ-ROJAS, *et al.*,

          Plaintiffs,

v.

UNITED STATES OF AMERICA, *et al.*,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 11-cv-0522-L(DHB)

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS AND/OR TO
STRIKE PORTIONS OF THE
THIRD AMENDED COMPLAINT
[doc. #148]**

20
**I.    BACKGROUND**

21
     On May 28, 2010, Mr. Hernandez-Rojas was arrested along with his brother Pedro in the

22
mountainous area near Otay Mesa. (Third Amended Complaint ("TAC") ¶¶ 43-44.) After Mr.

23
Hernandez-Rojas was transported to a border patrol station, Plaintiffs allege that he suffered

24
physical abuse and was refused medical care for his injuries. (TAC ¶¶ 64-83.) Plaintiffs allege

25
that Mr. Hernandez-Rojas was refused access to an immigration judge and that he was brought

26
to the border to be deported despite having refused to sign a voluntary departure form. (*Id.*; TAC

27
¶¶ 132.) At the border, Plaintiffs allege that federal agents physically attacked Mr. Hernandez-

28
Rojas by punching him, kicking him, hitting him with batons, tying his legs to his arms, and

1   repeatedly electrocuting him with a "Taser" device. (TAC ¶¶ 88-117.) Mr. Hernandez-Rojas

2   died, allegedly as a result of Defendant agents' actions. (TAC ¶ 116-17.)

3        Plaintiffs brought this action on March 16, 2011. [doc. #1.] Plaintiffs allege in their TAC,

4   filed on March 13, 2012, that their father, Anastacio Hernandez-Rojas, died as a result of

5   physical abuse by Defendant officers in their capacities as agents of Defendant United States of

6   America. (TAC ¶ 28).

7        Defendant United States of America moves to dismiss Plaintiffs' sixth, seventh, eighth,

8   and fourteenth causes of action against it pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal

9   Rules of Civil Procedure. (doc. #148.)

10  **II.   LEGAL STANDARD**

11       **A.   Motion to Dismiss for Failure to State a Claim**

12       The court must dismiss a cause of action for failure to state a claim upon which relief can

13  be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal

14  sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court

15  must accept all allegations of material fact as true and construe them in light most favorable to

16  the nonmoving party. *Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d

17  972, 975 (9th Cir. 2007). Material allegations, even if doubtful in fact, are assumed to be true.

18  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the court need not "necessarily

19  assume the truth of legal conclusions merely because they are cast in the form of factual

20  allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)

21  (internal quotation marks omitted). In fact, the court does not need to accept any legal

22  conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

23       "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

24  factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

25  requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

26  of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Instead, the

27  allegations in the complaint "must be enough to raise a right to relief above the speculative

28  level." *Id.* Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

11cv522

1   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S.

2   at 678 (citing Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff

3   pleads factual content that allows the court to draw the reasonable inference that the defendant is

4   liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability

5   requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

6   *Id.* A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory

7   or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749

8   F.2d 530, 534 (9th Cir. 1984).

9       Generally, courts may not consider material outside the complaint when ruling on a

10  motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19

11  (9th Cir. 1990). However, documents specifically identified in the complaint whose authenticity

12  is not questioned by parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1

13  (9th Cir. 1995) (superceded by statutes on other grounds). Moreover, the court may consider the

14  full text of those documents, even when the complaint quotes only selected portions. *Id.* It may

15  also consider material properly subject to judicial notice without converting the motion into one

16  for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

17  **III.   DISCUSSION**

18          **A.    Plaintiffs have Stated a Claim for Relief under the Bane Act.**

19                  **1. The TAC Properly Identifies the Statute Underlying its Bane Act Cause of**

20                  **Action, and Reference to the Unruh Act Will be Stricken from the TAC.**

21      Defendant United States notes in its motion that Plaintiffs "inexplicably [rely] on the

22  Unruh Act in [their] fourteenth cause of action." (doc. #148-1, p.8.) In opposition, Plaintiffs

23  concede that the Unruh Act is inapplicable to this case and that the Bane Act is the operative

24  statute underlying their fourteenth cause of action. (doc. #224, p.9.) Even as it mislabels the

25  operative statute as the Unruh Act rather than the Bane Act, the TAC properly identifies

26  California Civil Code § 52.1 as the basis for Plaintiffs' fourteenth cause of action against

27  Defendant United States. Because Plaintiffs' error is typographical rather than substantive in

28  nature, the Court will strike reference to the Unruh Act in the TAC.

11cv522

1

### 2. Defendant has not Shown Plaintiffs' Bane Act Cause of Action to be

2

### Duplicative.

3        After correctly asserting that the Bane Act falls within the scope of the Federal Tort

4   Claims Act ("FTCA"), Defendant attempts to show Plaintiffs' fourteenth cause of action to be

5   duplicative of other FTCA causes of action asserted in the ninth, tenth, and twelfth causes of

6   action in the TAC. (doc. #148-1, p.9.) Defendant contends that because "the FTCA provides the

7   exclusive remedy for tortious conduct of federal employees acting within the course and scope

8   of their employment when such conduct results in injury or death," "this statute does not provide

9   a separate cause of action distinct from Plaintiffs' other FTCA claims found in the ninth, tenth,

10  and twelfth causes of action, and should be stricken from the complaint." (doc. #148-1, p.10.)

11       Defendant provides no reasoning to support this argument. Instead, it cites to one

12  unpublished opinion, *McAuliffe v. U.S. Dep't of Veterans Affairs*, 2007 WL 2123690 at *3 (N.D.

13  Cal. July 23, 2007). In *McAuliffe*, the court struck a cause of action which listed the same state-

14  law basis for liability under the FTCA more than once. *Id*. The *McAuliffe* court did not hold a

15  cause of action under the Bane Act to be redundant simply because that plaintiff had asserted

16  other causes of action under the FTCA. *Id*. As Plaintiffs contend in opposition, "the elements of

17  a section 52.1 cause of action are distinct from the Estate's other tort causes of action (wrongful

18  death, assault and battery, and negligence)." (doc. #224, p.13.) In short, Defendant has not

19  shown Plaintiffs' Bane Act cause of action to be duplicative of their other causes of action

20  sounding in tort.

21       Defendant presents two new contentions in its reply brief. First, Defendant argues that

22  Plaintiffs lack standing. (doc. #226, pp.8-9.) Second, Defendant asserts that Plaintiffs' Bane Act

23  cause of action duplicates Plaintiffs' second, third, fifth, sixth, and seventh causes of action in

24  the TAC. (doc. #226, p.10.) The Court does not reach these new issues on the merits because

25  Defendant has improperly raised them for the first time in its reply, thereby depriving Plaintiffs

26  of the opportunity to respond. *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990);

27  *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992).

28  / / /

11cv522

**3. Defendant has not Shown that Plaintiffs Failed to Exhaust their Administrative Remedies Before Bringing suit under the Bane Act.**

Defendant contends in its motion that "Plaintiffs' administrative tort claims failed to allege . . . [a] Bane Act claim." (doc. #148-1, pp.10-11.) It contends that because Plaintiffs failed to mention the Bane Act claim in their administrative proceedings, the court now lacks subject matter jurisdiction over this claim. *See* 28 U.S.C. § 2675. (*Id.* at 12.) Defendant is incorrect.

As the Ninth Circuit reasoned in *Shipek v. United States*, "we have consistently interpreted the notice required under section 2675(a) as minimal. In *Avery*, the court explained that 'a skeletal claim form, containing only the bare elements of notice of accident and injury and a sum certain representing damages, suffices to overcome an argument that jurisdiction is lacking.'" *Shipek*, 752 F.2d 1352, 1354 (9th Cir. 1985) (quoting *Avery v. United States*, 680 F.2d 608, 610 (9th Cir. 1982)).

Plaintiffs' claim form contains notice of the event, injury, and a damages request consisting of a claim for $10 million for each child. (doc. #148-2, p.3.) Thus, Plaintiffs properly provided the United States with notice of their Bane Act claim, and this Court has jurisdiction to hear the claim. *See Shipek*, 752 F.2d at 1354; *see also Warren v. U.S. Dep't of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 780 (9th Cir. 1984).

**B.     Plaintiffs' Seventh Cause of Action Against the United States Will be Dismissed.**

Plaintiffs concede in opposition that as a result of a typographical error, the United States is inadvertently named as a defendant in the seventh cause of action in the TAC rather than Defendant Customs and Border Protection Agent 7663. (doc. #224, p.8-9.) Plaintiffs assert that "the substance of the allegations for the seventh cause of action makes clear that the claim is against Defendant 7663." (*Id.* at 9.) They further request that the Court grant them leave to amend the TAC in order to name the correct defendant. (*Id.*)

Naming the wrong defendant is a substantive error, not a mere typographical oversight. The Scheduling Order of February 13, 2012 set a deadline of June 11, 2012 for amendments to pleadings, to be modified only upon a showing of good cause. (doc. #45, ¶¶ 2, 19.) Inadvertence

11cv522

or mistake of counsel does not constitute good cause to modify a scheduling order. *See United States v. Vaccaro*, 51 F.3d 189, 191 (9th Cir. 1995). Plaintiffs have not demonstrated good cause to modify the scheduling order in their opposition. Thus, Plaintiffs' seventh cause of action against the United States will be dismissed. If they wish to further amend the TAC, Plaintiffs must file a motion to amend the scheduling order and seek leave to further amend the complaint.

### C.   Plaintiffs' Eighth Cause of Action Falls within the FTCA's Waiver of Sovereign Immunity.

Defendant moves to dismiss Plaintiffs' eighth cause of action for "Torture by Taser as a Violation of the Laws of Nations" on the ground that the United States has not waived sovereign immunity. (doc. #148-1, pp. 5-7; TAC ¶¶ 184-194.) Plaintiffs oppose, arguing that this cause of action falls under the FTCA's waiver of sovereign immunity because Defendant 7663 committed a wrongful act within the scope of his employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). (*See* doc. #224, p. 20.) Plaintiffs contend that the right to be free from torture has reached the status of the peremptory international norm known as *jus cogens*, the violation of which would provide for liability in California if the United States were a private person. (*Id.*) In reply, Defendant cites to *Woodbury v. United States*, 313 F.2d 291 (9th Cir. 1963) in support of the proposition that California is the sole source of "the law of the place where the act or omission occurred" for the purpose of the FTCA's sovereign immunity waiver, and that California law does not subsume *jus cogens* norms. *See* 28 U.S.C. § 1346(b) (*See* doc. #226, p.7.)

First, a *jus cogens* norm of international law is binding law within the state of California.

> As defined in the Vienna Convention on the Law of Treaties, a *jus cogens* norm, also known as a "peremptory norm" of international law, "is a norm accepted and recognized by the international community of states as a whole as a norm from which no derogation is permitted and which can be modified only by a subsequent norm of general international law having the same character."

*Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 714 (9th Cir. 1992) (quoting Vienna Convention on the Law of Treaties, art. 53, May 23, 1969, 1155 U.N.T.S. 332, 8 I.L.M. 679).

11cv522

> While *jus cogens* and customary international law are related, they differ in one important respect. Customary international law, like international law defined by treaties and other international agreements, rests on the consent of states. A state that persistently objects to a norm of customary international law that other states accept is not bound by that norm . . . [citation omitted]
>
> . . . In contrast, *jus cogens* "embraces customary laws considered binding on all nations," and "is derived from values taken to be fundamental by the international community, rather than from the fortuitous or self-interested choices of nations[.]" Whereas customary international law derives solely from the consent of states, the fundamental and universal norms constituting jus cogens transcend such consent.

*Id.* at 715 (quoting Klein, *A Theory for the Application of the Customary International Law of Human Rights by Domestic Courts*, 13 YALE J. INT'L L. 332, 351 (1988))**.** Because a *jus cogens* norm of international law transcends the consent of states, it is binding regardless of such consent and can be modified only by a subsequent norm of the same character. *Id.* at 714-17. Thus, a *jus cogens* norm of international law is binding on all states, including the state of California, by definition unless a subsequent norm has supplanted it.

Second, the prohibition against torture is a *jus cogens* norm of international law. As the Ninth Circuit noted in *Siderman de Blake*:

> In light of the unanimous view of these authoritative voices, it would be unthinkable to conclude other than that acts of official torture violate customary international law. And while not all customary international law carries with it the force of a *jus cogens* norm, the prohibition against official torture has attained that status.

*Id.* at 717. No subsequent *jus cogens* norm of international law has supplanted the *jus cogens* prohibition against torture. Therefore, a *jus cogens* norm exists prohibiting torture. Because any *jus cogens* norm is binding law within the state of California, the *jus cogens* norm prohibiting torture is binding law within the state of California.

Defendant cites to *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) for its contention that the Supreme Court has "exercised caution in adapting 'the law of nations' to private rights." (doc. #226, p.7-8.) In *Sosa*, the Court rejected a plaintiff's invocation of purportedly binding customary international law which would provide a general prohibition on "arbitrary" detention. *Id.* at 736. The Court noted the broad implications of such a rule and the lack of authority the plaintiff had provided to support the court's adopting it. *Id.* at 737. In contrast to

the rule invoked by the *Sosa* plaintiffs, the *jus cogens* norm in prohibition of torture finds ample

binding authority to support it. The Ninth Circuit has explicitly held that official torture violates

the law of nations in such a way as for there to exist a binding *jus cogens* peremptory norm of

international law prohibiting it in all states. *See Siderman de Blake*, 965 F.2d at 717.

Third, the FTCA's waiver of sovereign immunity applies to violations of the *jus cogens*

norm prohibiting torture.

> Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Under the FTCA, "state law, not federal law, controls." *Woodbury*, 313

F.2d at 295. Because the *jus cogens* norm prohibiting torture is binding law within the state of

California, a private person would be liable for torture in accordance with that norm within

California. Therefore, the FTCA's waiver of sovereign immunity applies to claims of personal

injury resulting from torture within California. *See id.* United States District Courts have

exclusive jurisdiction of civil actions on such claims. *Id.*

In sum, Plaintiffs' eighth cause of action for torture in violation of the laws of nations

falls within the FTCA's waiver of sovereign immunity. Plaintiffs' eighth cause of action will

not be dismissed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

8

11cv522

## IV.   CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss. (doc. #148.) Specifically, the Court **DISMISSES WITHOUT PREJUDICE** the seventh cause of action. Furthermore, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' request for **LEAVE TO AMEND** the seventh cause of action.

**IT IS SO ORDERED.**

DATED:  September 24, 2013

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. DAVID H. BARTICK
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

11cv522