1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10

11 | THE ESTATE OF ANASTACIO          )    Civil No. 11-cv-522-L (DHB)
   | HERNANDEZ-ROJAS, et al.,         )

12 |                                  )    **ORDER DENYING PLAINTIFFS'**
   |              Plaintiffs,          )    **MOTION TO STRIKE ANSWER;**

13 |                                  )    **FOR DEFAULT JUDGMENT; AND**
   | v.                               )    **FOR A FINDING OF LIABILITY**

14 |                                  )    **[doc. #165]**
   | Customs and Border Protection Agent )

15 | 7663; the UNITED STATES OF       )
   | AMERICA, et al.,                 )

16 |                                  )
   |              Defendants.         )

17

18        On May 31, 2013, Plaintiffs The Estate of Anastacio Hernandez-Rojas filed a motion to

19 strike the answer of Defendant Customs and Border Protection Agent 7663 ("Agent 7663"), to

20 obtain a default judgment against him, and for a finding of liability as to Agent 7663 and

21 Defendant United States pursuant to Federal Rule of Civil Procedure 37(b). The motion has been

22 fully briefed and the Court found this motion suitable for determination on the papers submitted

23 and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the following reasons, the Court

24 **DENIES** Plaintiffs' motion.

25 / / /

26 / / /

27 / / /

28 / / /

# I.    BACKGROUND[1]

On May 28, 2010, United States Border Patrol agents arrested Mr. Hernandez-Rojas and his brother. (TAC ¶ 43–44.) Mr. Hernandez-Rojas and his brother were subsequently turned over to agents of the Wackenhut Company. (*Id.* ¶ 54.) They were then transported to the Border Patrol Detention Facility and turned over to two of the Defendants, Border Patrol Agents V315 and V325. (*Id.* ¶ 57, 59.) After being taken to the processing area, Mr. Hernandez-Rojas complained about his treatment at the hands of Agent V325, requested medical attention, and asked to appear before an immigration judge. (*Id.* ¶ 75–76.) In response to his requests, Border Patrol Supervisor V61 allegedly ordered the Agents to remove Mr. Hernandez-Rojas from the United States. (*Id.* ¶ 82.)

Mr. Hernandez-Rojas was taken to a border area known as "Whiskey 2," where Agents allegedly struck him with batons, threw him to the ground, and "punched, kicked and stepped on [his] head and body." (TAC ¶ 86, 89–92.) A group of civilians began taking photographs and videos of the events and allegedly screamed for the agents to stop. (*Id.* ¶ 94–95.) Agent V7663 allegedly shot Mr. Hernandez-Rojas with his Taser gun five times. (*Id.* ¶ 107, 114.) Although Mr. Hernandez-Rojas cried for help and pleaded for him to stop, Agent 7663 allegedly took his Taser, applied it directly to Mr. Hernandez-Rojas' body, and electrocuted him. (*Id.* ¶ 113–114.) Plaintiffs allege that Agent 7663's actions contributed to Hernandez-Rojas's heart attack and ultimate death. (*Id.* ¶ 106–117.)

There are eleven causes of action remaining in the TAC Plaintiffs filed on March 23, 2012.[2] [Doc. 53.] On September 18, 2012, Defendants filed their first amended answer to the TAC. [Doc. 109.] Agent 7663 was deposed on December 6, 2012, where he elected to invoke his

---

[1]    The factual background is taken from the Third Amended Complaint ("TAC"), which is the operative complaint in this matter. [doc. #53.]

[2]    On April 9, 2012, the Court granted the parties' joint motion to dismiss the eleventh and thirteenth causes of action in the TAC: intentional infliction of emotional distress and negligent infliction of emotional distress. [doc. #60.] The seventh cause of action against the United States for torture by a Taser as a violation of the Fourth Amendment pursuant to the Federal Tort Claims Act was dismissed pursuant to a court order issued on September 24, 2013. [doc. #279.]

1  Fifth Amendment rights and declined to answer particular questions. (*See* Ex. 10, Agent 7663

2  Depo.) Plaintiffs now move to strike Agent 7663's answer, obtain a default against him, and find

3  liability as to both Agent 7663 and the United States.[3]

4  **II.   LEGAL STANDARD**

5       Federal Rule of Civil Procedure 37(b) permits a Court to impose sanctions upon a party

6  for failing to obey a discovery order. FED. R. CIV. P. 37(b). Rule 37(b)(2) states that if a party

7  "fails to obey an order to provide or permit discovery," the court in which the action is pending

8  may "make such orders in regard to the failure" of the disobedient party, including an order

9  deeming certain facts as established, refusing to permit the support or opposition of designated

10  claims, striking pleadings, dismissing the action, rendering a default judgment, or holding the

11  disobedient party in contempt. FED. R. CIV. P. 37(b)(2).

12       Rule 26 provides that the scope of discovery includes non-privileged matter that is

13  relevant to a party's claim or defense. FED. R. CIV. P. 26(b). "What is privileged is defined by the

14  Federal Rules of Evidence; these rules include the privilege against self-incrimination."

15  *Campbell v. Gerrans*, 592 F.2d 1054, 1057 (9th Cir. 1979). The Fifth Amendment privilege is

16  intended to be a shield against compulsory self-incrimination. *U.S. v. Rylander*, 460 U.S. 752,

17  758 (1983). Although some courts have imposed sanctions against parties who assert the

18  privilege in a civil suit, "[t]he error that has been made in some of the cases in this line of

19  authority is to view all pleading of the Fifth Amendment in the discovery stage as improper."

20  *Campbell,* 592 F.2d at 1057; *see also Lyons v. Johnson*, 415 F.2d 540 (9th Cir. 1969). District

21  courts have discretion in responding to a party's invocation of the Fifth Amendment privilege

22  against self-incrimination. *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998).

23  **III.   DISCUSSION**

24       Both parties concede that Agent 7663 validly invoked his Fifth Amendment privilege

25  against self-incrimination during his deposition. (*See* Pls.' Mot. 21:15–19; Defs.' Opp'n 7:6–8,

26

27       [3]     Plaintiffs request that the Court defer entry of judgment against Defendant United

28  States until after the submission and consideration of Plaintiffs' plenary summary judgment opposition.

1    n. 2.) Plaintiffs, however, argue that Agent 7663's strategic use of the privilege has precluded

2    them from obtaining critical discovery. Thus, Plaintiffs request that the Court strike Agent

3    7663's answer, enter default judgment, and make a finding of liability. (Pls.' Mot. 1:13–18.) The

4    Court declines to do so for the reasons stated below.

5          A.    **A Court Order is a Prerequisite to Imposing Rule 37(b) Sanctions**

6          Rule 37(b) clearly states that a court order must be in effect before sanctions may be

7    imposed. *Contreraz v. Salazar*, No. 11cv265, 2012 WL 528240, at * 3 (S.D. Cal. Feb. 17, 2012)

8    (citing *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986); *Fox v. Studebaker-*

9    *Worthington, Inc.*, 516 F.2d 989, 994 (8th Cir. 1975); *see also United States v. One Parcel of*

10   *Real Prop.*, 780 F. Supp. 715, 722 (D. Or. 1991) (declining to grant sanctions under Rule 37 in

11   the absence of a pervious court order, especially where it was unclear whether the party still

12   would have refused to answer if an order compelling discovery had been issued). Thus, as

13   Defendants argue, "[t]he violation of a discovery order is an absolute prerequisite for Rule 37

14   sanctions." (Defs.' Opp'n 8:12–22); *see Uniqard Sec. Ins. Co. v. Lakewood Engineering & Mfg.*

15   *Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).

16         Plaintiffs rely on a Massachusetts District Court case for the proposition that where a

17   party validly invokes his privilege against self-incrimination, Courts may employ Rule 37

18   sanctions even where the party has not disobeyed a court order compelling discovery. (Pls.' Mot.

19   11:13–19) (citing *Stop & Shop Companies, Inc. v. Interstate Cigar Co., Inc.*, 110 F.R.D. 105,

20   108 (D. Mass. 1989)). Plaintiffs overstate the scope of the court's decision. Although the facts in

21   *Stop & Shop* are similar in that Defendants appeared at their depositions and validly invoked

22   their privilege against self-incrimination, the court dealt with a motion to dismiss a counterclaim,

23   rather than a motion to strike an answer or to enter default judgment. *Stop & Shop*, 110 F.R.D. at

24   108. The court noted that courts have "the power to dismiss the Complaint despite the fact that

25   the [party] has not disobeyed an order compelling discovery." *Id.* In other words, Rule 37(b) is

26   not the only rule permitting dismissal of a complaint. For example, the existence of, and

27   subsequent violation of, an order compelling discovery is not required for a court to rule on a

28   motion to dismiss brought under Rule 12(b)(6). However, the court explicitly states that Rule

37(b) "grants the power to impose sanctions only upon the violation of a Court order compelling discovery." *Id.* Here, there was no such order. Plaintiffs cannot seek to strike Agent 7663's answer or obtain default judgment against him under Rule 37(b) where no order compelling discovery was ever issued.

Plaintiffs also argue that because of his valid invocation of the Fifth Amendment, it would have been improper for the court to issue an order compelling Agent 7663 to answer questions at his deposition; thereby making it impossible for him to have violated a court order. (Pls.' Reply 9:15–19.) Although Plaintiffs are correct on the law, the issue here is not whether the court could have issued an order compelling discovery. Rather, it is whether there was a court order issued in order to trigger Rule 37(b). No court order compelling discovery was issued; therefore, Plaintiffs requests under Rule 37(b) must fail. Moreover, given that discovery violations are governed by Rule 37, the court is precluded from imposing sanctions under its inherent powers in the absence of any sanctionable conduct. *See Zambrano v. City of Tuscan*, 885 F.2d 1473, 1478 (9th Cir. 1989).

B.    **Even if a Court Order was Violated, Plaintiffs are not Substantially Precluded from Discovery**

Although he answered some questions on collateral issues, Plaintiffs argue that Agent 7663 used the Fifth Amendment privilege at his deposition "to refuse to answer all questions regarding the relevant events that transpired, which led to Mr. Hernandez-Rojas's death." (Pls.' Mot. 14:6–12.) In particular, Plaintiffs contend Agent 7663 refused to answer questions regarding his use of force against Mr. Hernandez-Rojas and his use of the Taser on decedent. Plaintiffs argue that, as a result of his selective use of the privilege, "Defendant [Agent] 7663 has unilaterally barred Plaintiffs from engaging in the type of rigorous fact-finding, analysis and testing of Defendant's claims and defense that the discovery process is intended to provide." (Pls.' Mot. 15:6–11.)

Defendants assert that "[g]iven the appearance of a politically motivated grand jury investigation, [Agent] 7663 elected to invoke his Fifth Amendment rights and to decline to answer particular questions at his deposition." (Defs.' Opp'n 5:11–13.) In particular, Defendants

1    point out that Agent 7663 selectively invoked the privilege in response to questions seeking

2    admissions of guilt. (Defs.' Opp'n 5:13–28.) In fact, "all of the questions to [Agent] 7663 quoted

3    in Plaintiffs' brief seek admissions." (Defs.' Opp'n 5:13–28.) Moreover, Defendants reference

4    the sheer amount of discovery Plaintiffs have received in other forms, including the complete

5    transcript of Agent 7663's interview with the San Diego Police Department, the activation record

6    for his Taser, the incident and investigative reports, the videos of the incident taken by two

7    witnesses, and the depositions of 49 fact witnesses who testified about their observations of

8    Agent 7663's actions and the incident. (*See* Defs.' Opp'n 6:1–7:8.) Thus, Defendants argue that

9    Agent 7663's invocation of the Fifth Amendment for some, but not all, questions posed to him at

10   his deposition has not crippled Plaintiffs' ability to find the truth. (Defs. Opp'n 7:2–8.)

11          The facts of this case fall somewhere in-between the use of the Fifth Amendment as a

12   total bar to discovery and its invocation to a few highly questionable interrogatories. In *Lyons v.*

13   *Johnson*, the plaintiff employed the Fifth Amendment privilege in response to any depositional

14   interrogation or discovery related to the claims. *Lyons*, 415 F.2d 540, 541 (9th Cir. 1969). The

15   plaintiff continued to invoke the privilege despite the trial court's warning that her actions would

16   lead to the dismissal of her case. *Lyons,* 415 F.2d at 541. Thus, the trial court dismissed her case

17   and the court of appeals upheld that dismissal on the grounds that plaintiff used the Fifth

18   Amendment as a sword. *Id.* at 542. In contrast, the court of appeals in *Campbell v. Gerrans*

19   found that the trial court's dismissal of the case based on plaintiff's refusal to answer four out of

20   thirty-four interrogatories was an abuse of discretion given the highly questionable nature of the

21   interrogatories. *Campbell*, 592 F.2d 1054, 1057 (9th Cir. 1979). The *Campbell* court also

22   reasoned that the otherwise liberal treatment of discovery rules has boundaries, including the

23   Fifth Amendment. *Campbell*, 592 F.2d at 1057.

24          Plaintiffs' argument follows the reasoning in *Lyons*, in which the court explained why a

25   plaintiff should not be permitted to use the Fifth Amendment privilege as both a sword and a

26   shield. (Pls.' Reply 5:7–20); see *Lyons*, 415 F.2d at 542. Plaintiffs assert that Agent 7663 is

27   using his Fifth Amendment right as an offensive weapon because he has remained silent "while

28   simultaneously claiming a number of affirmative defenses and maintaining that his conduct was

reasonable." (Pls.' Mot. 19:1–11.) Plaintiffs also argue that they have been deprived of their right to use Agent 7663 as a witness to meet their burden of proof. (Pls.' Mot. 20:16–18.) For example, Plaintiffs argue that Agent 7663 refused to answer questions about his use of the Taser on Mr. Hernandez-Rojas, including the amount of times the Taser was used, the length of time the Taser was applied, and whether the Taser was in drive stun mode. (*See* Pls.' Mot. 19:15–20:15) (citing Depo. Tr. Defendant 7663 at 79:24–81:22.) In light of Agent 7663 invocation of the privilege, Plaintiffs contend that they have no evidence relating to Agent 7663's claims in his first amended answer that he "appropriately employed" the Taser to Mr. Hernandez-Rojas. (Pls.' Mot. 18:14–21.)

Although the questions Agent 7663 declined to answer go directly to his involvement in the incident with Mr. Hernandez-Rojas, "the Ninth Circuit provides relatively broad Fifth Amendment protection." *Schemkes v. Presidential Limousine*, No. 09-cv-1100, 2011 WL 691240, at * 5 (D. Nev. Feb. 18, 2011). Moreover, district courts have discretion with respect to fashioning remedies in response to a party's invocation of the Fifth Amendment. *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008). Thus, in light of the vast amount of discovery that Plaintiffs have already received from Defendants, Agent 7663's invocation of his privilege against self-incrimination to some, but not all, of the questions at his deposition has not barred Plaintiffs from obtaining meaningful discovery. (*See* Defs.' Opp'n 6:1–7:8.) Agent 7663's selective invocation of the privilege to only potentially incriminating questions that sought admissions of guilt is more comparable to the facts in *Campbell*, where the highly questionable nature of the interrogatories justified use of the Fifth Amendment. *Campbell*, 592 F.2d at 1057. However, a continued invocation of the Fifth Amendment to material issues may permit an adverse inference at trial based on Agent 7663's silence. *Schemkes,* 2011 WL 691240, at * 5 (citing *Campbell*, 592 F.2d at 1058; *Nationwide Life Ins. Co.*, 541 F.3d at 910*)*.

Moreover, as Defendants note, courts have "routinely insisted upon a finding of bad faith before sanctions may be imposed under the court's inherent powers." (Defs.' Opp'n 10:22–28) (citing *Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989)). In particular, "sanctions of default judgment are not to be imposed unless noncompliance with discovery procedures is due to willfulness or bad faith" because it is the harshest of the Rule 37(b)

sanctions. *Baker v. Limber*, 647 F.2d 912, 918 (9th Cir. 1981) (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640 (1976)).[4] In this context, bad faith is usually based on a finding of either an improper invocation of the Fifth Amendment privilege or willful noncompliance with a court order. *See e.g.*, *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) (finding that an improper invocation of the privilege coupled with failure to comply with court orders justified issuing a default).

Plaintiffs argue that because Agent 7663 consciously and repeatedly invoked the Fifth Amendment during his deposition and subsequently filed a motion for summary judgment, he willfully violated Rule 37. (Pls.' Reply 9:2–11.) Thus, Plaintiffs contend that willfulness is sufficient if it is conscious or intentional, rather than accidental or involuntary. Conversely, Defendants argue that a proper invocation of the Fifth Amendment does not constitute willful noncompliance or bad faith. (Defs.' Opp'n 11:1–7.) Defendants rely on *Campbell* to argue that when an invocation of the privilege is proper, "the [Supreme] Court has made clear that the privilege protects the right of a person to remain silent...and that he is to suffer no penalty for his silence." (Defs.' Opp'n 11:8–26) (citing *Campbell*, 592 F.2d at 1057). Given that Agent 7663 neither violated a court order nor used his Fifth Amendment privilege to be completely non-responsive at his deposition, a finding of bad faith or willfulness would undermine his selective invocation of his right to remain silent in this context.

## IV.  CONCLUSION & ORDER

In light of the foregoing, the Court **DENIES** Plaintiffs' motion.

**IT IS SO ORDERED.**

DATED: December 12, 2013

M. James Lorenz
United States District Court Judge

COPY TO:

HON. WILLIAM V. GALLO
UNITED STATES MAGISTRATE JUDGE
ALL PARTIES/COUNSEL

---

⁴    Notably, both *Lyons* and *Campbell* involved the dismissal of a case rather than a request for an order striking an answer and entering default judgment.

11cv522

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

11cv522